## MONTOYA v. TIDE WATER ASSOCIATED OIL CO.

Civ. 35–145.

United States District Court

S. D. New York.

April 21, 1948.

678

William L. Standard and Louis R. Harolds, both of New York City, for plaintiff. .

John F. X. McGohey, of New York City, and William T. Ard, of Jersey City, N. J., for defendant.

BONDY, District Judge.

Plaintiff was employed as a messman on the defendant's vessel "William F. Humphrey", which on March 4, 1942 started on a voyage from New York to ports in the Western Hemisphere. The shipping articles which plaintiff signed contained a rider attached to the front page, stating that there shall be applicable Maritime War Emergency Board Decisions No. 1, dated December 22, 1941; No. 2 with attachments 1, 2 and 3, dated January 10, 1942; No. 3, dated January 20, 1942; No. 4, dated January 22, 1942; No. 5, revised February 21, 1942; No. 6, dated February 24, 1942. The vessel was destroyed by enemy action July 16, 1942. The plaintiff was captured and interned by the Japanese until August 15, 1945 when he· was liberated. He was repatriated and arrived in New York on September 18, 1945.

On November 19, 1942 the Maritime War Emergency Board issued a certificate of plaintiff's presumptive death "in accordance with applicable decisions of the Board." On December 4, 1942, defendant deposited with the United States Shipping Commissioner at New York the sum of $1,248.07, of which $869.04 represented plaintiff's earned but unpaid wages, $358.75 benefits prescribed . by Maritime War Emergency Board Decision No. 5 for the period from the loss of the vessel to the date of the certificate of presumptive death, and the remaining $20.28 an overpayment. The shipping commissioner deposited the said sum with the United States District Court for the Southern District of New York and on July 31, 1943 the court paid said sum to an administrator of plaintiff's estate appointed by a Louisiana court. On October 3, 1945 the Maritime War Emergency Board issued an order correcting its order of November 19, 1942, declaring plaintiff presumptively dead, by deleting his name from the list of "Missing Members of Crew."

Upon his return to the United States defendant paid him, pursuant to Maritime War Emergency Board Decision No. 5, $3,357.07 for basic and emergency wages aggregating $87.50 per month from November 19, 1942, the date of the certificate of his presumptive death, to September 18, 1945, the date of his return to New York, a war bonus of $100 per month while on the enemy vessel from July 17,

1942 to November 1, 1942, and repatriation voyage bonus at various rates from September 8, 1945 to September 13, 1945.

Plaintiff demanded from defendant his earned wages which had been deposited with the shipping commissioner and ultimately had been paid to the administrator of plaintiff's estate. He also claims double wages pursuant to 46 U.S.C.A. §§ 596 and 597 by reason of nonpayment to him of his earned wages. He further claims that he is entitled to a bonus of $100 a month from November 2, 1942 to September 7, 1945 while he was a prisoner of war on land and while on land after liberation awaiting repatriation, additional compensation for service record at ten per cent of his basic pay from the time of loss of the vessel until his repatriation and also vacation pay at twenty-one days per year for the period from the loss of the vessel until his repatriation.

Under an agreement dated December 7, 1940 and a supplement thereto dated February 1, 1942, between defendant and Tide Water Tanker Men's Association of which plaintiff was a member and which was certified by the National Labor Relations Board on September 21, 1940 as the exclusive representative for the unlicensed personnel employed on the defendant's ocean going vessels plaintiff was entitled to a basic monthly wage of $70, a temporary emergency increase of $17.50 per month, "additional compensation for service record" of six per cent. of his basic monthly wage after two years of "continuous service" for the period up to May 3, 1942 and ten per cent. of his basic monthly wage after three years of "continuous service" for the period subsequent to May 3, 1942, and also to an annual vacation of twenty-one days with pay "after one year of continuous service." Plaintiff had been employed by defendant for at least two years before shipping on the "William F. Humphrey".

■ Plaintiff testified that his ability to read English was limited, that only the second page of the shipping articles was exposed when he signed them, that he did not see the front page with the attached rider, that no one told him that he was bound by decisions of the Maritime War Emergency Board and that the shipping commissioner told him that he would receive a $100 bonus until he returned to New York. There is however nothing in the record raising an inference of fraud or imposition upon the plaintiff in signing the articles which would release him therefrom, and he accepted payments under the provisions of the rider. Plaintiff is therefore bound by Maritime War Emergency Board Decisions incorporated in the articles.

■ Decision No. 2 is therein stated to be a "decision with respect to bonus areas and bonus payments for licensed and unlicensed personnel employed on United States Flag vessels of the American Merchant Marine." "Voyages" are divided into classifications. Attachment No. 3 illustrates the application of the bonus rate "for voyages traversing waters as described in some of the different classifications." All classifications cover "voyages between ports", "voyages in waters" and "voyages". Port bonuses are payable "for calls" in designated areas. In a memorandum to Decision No. 2 it is stated: "Except as expressly provided, bonuses are payable only while vessels are within the limits defined in their respective classes." There can be no doubt that this decision applies only to the "voyage of the vessel", and that the $100 bonus plaintiff claims for the period of his internment on land cannot be based thereon. Cf. Agnew v. American President Lines, D.C., 73 F.Supp. 944, 949. Nor can plaintiff's claim for such bonus be based on Decision No. 5, revised February 21, 1942. Under Article 2 of that decision, in the event of the internment of the personnel of any vessel or the destruction or abandonment of such vessel, the shipowners assumed liability only "for payment of basic wages and emergency wages at the rates provided for in the ship's Articles * * * for the period from the date of the taking into custody of the personnel for the purposes of internment, or the destruction or abandonment of the vessel, until and including the date the Master, Officer or Member of the crew arrives at a Continental United States port." Under Article 3.D. thereof, in the event of internment of the personnel of a vessel or destruction or abandonment of a

vessel, where it is unknown if a member of the crew has lost his life, the shipowner with the approval of the Maritime War Emergency Board had the option of declaring the seaman presumptively dead "for the purposes hereof and of making payment of death benefits", and "thereupon payment shall be made of the death benefits provided in accordance with the ruling of the Maritime War Emergency Board and further payments under * * * Article 2 (relating to basic wages and emergency wages) shall cease." Under Article 6 of Decision No. 5, where the vessel is lost, "war bonus shall continue at the rate which prevailed immediately before the time of loss until the seaman arrives at a port where he is no longer exposed to marine perils * * * If during such period the seaman is taken into custody for purposes of internment, the internment provisions * * * govern. If internment does not follow the loss of a ship, the seaman shall receive no bonus while at a safe port awaiting repatriation. If he is repatriated in whole or in part by sea on some other vessel, then he shall receive, during such voyage, war bonus at the rate which would be received if his own vessel were making the same voyage as the vessel on which he is being repatriated."

■ Furthermore under Decision No. 5 the shipowner assumes liability during periods of internment only for basic wages and emergency wages at the rates provided for in the ship's articles. Plaintiff's services to defendant having terminated with the loss of the "William F. Humphrey" on July 16, 1942, 46 U.S.C.A. § 593, he is not entitled to additional compensation for service record or vacation pay based on continuous service when his rights under the shipping articles were limited during internment to the specific benefits provided by the Maritime War Emergency Board decisions. Cf. Agnew v. American President Lines, supra, 73 F.Supp. at page 951.

■ The unpaid wages of a deceased seaman are required to be deposited with the shipping commissioner who must remit same to the District Court. 46 U.S.C.A. §§ 622, 626. Plaintiff was declared presumptively dead pursuant to an option properly exercised by the shipowner in accordance with Decision No. 5. That option was to be exercised "for the purposes hereof and of making payment of death benefits." Nothing in Decision No. 5 dated February 21, 1942 expressly provides for the disposition of wages of presumptively dead seamen. However in a ruling on Decision No. 5, Revised, dated December 26, 1942, it is provided by the Maritime War Emergency Board that "In the event of death or presumed death of a seaman, unallotted wages payable up to the date of destruction or abandonment of a vessel shall be paid over by the operator to the Shipping commission in accordance with law * * *" Although it cannot be said that plaintiff expressly agreed to this ruling which was promulgated subsequent to his signing the articles, he agreed to be declared presumptively dead for the purposes of Decision No. 5 and even in the absence of the ruling of the Board as to payment to the shipping commissioner, such action on the part of the shipowner as to his earned wages and benefits payable under Decision No. 5 up to November 19, 1942 would appear to have been authorized by the plaintiff's agreement that he was to be presumed dead.

It therefore appears that there was paid by the defendant to the shipping commissioner under authority from the plaintiff and to the plaintiff all to which he was entitled by the articles and attached decisions, and the complaint accordingly must be dismissed.